COURT OF APPEALS
DECISION
DATED AND FILED

July 15, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.  2025AP580**

Cir. Ct. No.  2024CV342

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT II**

---

MARK GOSWITZ, ANNE DOUGLAS AND PAUL GOSWITZ,

   PLAINTIFFS-APPELLANTS,

 V.

KAY GOSWITZ AS SPECIAL ADMINISTRATOR FOR THE ESTATE OF
JOHN GOSWITZ, AS TRUSTEE OF THE GOSWITZ JOINT REVOCABLE
TRUST DATED NOVEMBER 10, 2004, AND INDIVIDUALLY,

   DEFENDANT-RESPONDENT.

---

APPEAL from an order of the circuit court for Manitowoc County: JERILYN M. DIETZ, Judge. *Reversed and cause remanded for further proceedings.*

Before Gundrum, Grogan, and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.  Mark Goswitz, Anne Douglas, and Paul Goswitz (collectively, the children) filed an action in the circuit court seeking relief after the death of their father, John Goswitz, revealed that John had breached an ongoing obligation from a divorce settlement agreement (DSA) with the children's mother, Helen Goswitz.[1]  The provision at issue required John to maintain several then-existing life insurance policies until his death, at which point the children were to receive all proceeds from those policies.

¶2    The circuit court dismissed the action pursuant to a motion filed by Kay Goswitz, John's second wife and the special administrator of his estate.  The court concluded that the children's action to enforce the divorce judgment is barred by the statute of repose established by WIS. STAT. § 893.40 (2023-24).[2]  For the reasons that follow, we agree with the children on appeal.  As we now explain, we conclude that the court erred in dismissing the action and, accordingly, we reverse and remand for further proceedings.

## BACKGROUND

¶3    The parties do not dispute the facts relevant to our inquiry.  John and Helen were divorced in January 1973.  They had three minor children at that time.  The judgment of divorce incorporated a DSA John and Helen had negotiated prior to the trial on the petition.  As pertinent to this discussion, the DSA contained the following provision:

---

[1] Because all of the parties to this action and to the underlying divorce share the same surname, we generally refer to those involved by their first names to avoid confusion.

[2] All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

2

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the defendant shall be required to keep in force and effect all life insurance policies now on his life including the life insurance policy owned by the plaintiff and the children of the parties shall be named as irrevocable beneficiaries on said policies.

John, who was 39 years old when he and Helen divorced, had eight separate life insurance policies in effect at that time.

¶4      In 1982, John moved the circuit court to modify the maintenance terms of the divorce judgment. In the proceedings that followed, John testified under oath that he understood and was in full compliance with the terms of the judgment. Although later investigation proved that testimony to have been false, John gave no indication during the proceedings that he had cancelled, or was planning to cancel, any of the life insurance policies.

¶5      John again moved to modify maintenance in 1984 and 1986 and again affirmed the general terms of the DSA and judgment in his testimony. The circuit court found that John had followed through on his agreements in conjunction with the divorce. At no point prior to his death did John petition the court to amend the portion of the judgment, as agreed to in the DSA, regarding his life insurance policies.

¶6      John married his second wife, Kay, in 1980, and he died in 2023. Under John's Last Will and Testament, the Goswitz Joint Revocable Trust (established in 2004) received the residue of the estate after some specific bequests. Kay is the trustee of the Goswitz Trust. The children first discovered during the probate process that John had failed to abide by the terms of the DSA and judgment requiring him to keep current the eight policies he had active in

1973 throughout the remainder of his life. The children have received no portion of John's estate.

¶7 When the children first learned from Kay in 2023 that John had no life insurance policies whatsoever at the time of his death, the children investigated their claims and then filed their complaint. The complaint raises the following causes of action: (1) request for declaratory judgment; (2) conversion; (3) statutory civil theft; (4) breach of fiduciary duty; and (5) breach of contract. As noted above, the circuit court granted Kay's motion to dismiss, finding the claims constituted an action to enforce the divorce judgment and were barred by the 20-year statute of repose applicable to actions upon a judgment. The children appeal.

## DISCUSSION

¶8 On appeal, we consider whether the circuit court erred in ruling that the 20-year statute of repose in WIS. STAT. § 893.40 barred the children from proceeding with their lawsuit. Application of the statute of repose to the facts of a case presents a question of law that we review de novo. *See Johnson v. Masters*, 2013 WI 43, ¶13, 347 Wis. 2d 238, 830 N.W.2d 647; *see also Schwab v. Schwab*, 2021 WI 67, ¶7, 397 Wis. 2d 820, 961 N.W.2d 56 (stating "[r]esolving this question requires us to interpret the language of both the statute and the parties' agreement, matters which we review de novo").

¶9 WISCONSIN STAT. § 767.01(1) provides that "[t]he circuit courts have jurisdiction of all actions affecting the family and have authority to do all acts and things necessary and proper in those actions and to carry their orders and judgments into execution as prescribed in this chapter." Relying on cases from our supreme court, the children argue that we should interpret § 767.01(1) to allow

4

actions to enforce divorce judgments on equitable grounds even after the 20-year period for the statute of repose established in WIS. STAT. § 893.40 has lapsed. *See, e.g.*, *Schwab*, 397 Wis. 2d 820, ¶16; *Johnson*, 347 Wis. 2d 238, ¶¶22-24. The children note that courts have stepped in to impose equitable remedies under similar circumstances, noting this is particularly important in family law cases, where the "realities of family court judgments" are that "ongoing obligations ... are common." *Johnson*, 347 Wis. 2d 238, ¶2.

¶10 Although we do not agree with the children's attempt to couch their lawsuit as anything other than an action to enforce a judgment, we are persuaded by their argument that we should reverse the circuit court's order of dismissal and reinstate the children's claims on equitable principles. Our conclusion is grounded in *Schwab* and its predecessor case, *Johnson*.

¶11 In *Johnson*, the parties divorced in 1989. *Johnson*, 347 Wis. 2d 238, ¶7. The former husband, Masters, had a pension plan through the Wisconsin Retirement System (WRS), but did not retire until 2009. *Id.*, ¶¶4, 8. The judgment of divorce contained a provision requiring a qualified domestic relations order (QDRO) be filed with WRS despite that, in 1989, state statute prohibited WRS members from assigning their benefits to other parties and did not include provisions for QDROs. *Id.*, ¶¶3-6. Soon thereafter, through the passage of 1989 Wis. Act 218, the legislature authorized WRS to accept QDROs, but the new law initially did not apply retroactively to divorces that occurred prior to its effective date of April 28, 1990. *Johnson*, 347 Wis. 2d 238, ¶6. It was not until May 1998 that legislation was passed permitting WRS to accept QDROs for marriages, such as Masters' and Johnson's, which were terminated between January 1, 1982, and April 28, 1990. *Id.*

5

¶12 When Masters retired, Johnson took steps to obtain a valuation of the pension and draft a QDRO to obtain her portion thereof. *Id.*, ¶8. However, WRS notified Johnson that Masters' authorization was required to release his pension information. Masters refused to provide Johnson with the necessary authorization despite his earlier agreement to do so.

¶13 Johnson subsequently filed a motion in the circuit court seeking an order requiring Masters to release his pension information. *Id.* Masters moved to dismiss the motion on the grounds that Johnson was barred by WIS. STAT. § 893.40 (2009-10) from enforcing the divorce judgment. *Johnson*, 347 Wis. 2d 238, ¶10. The circuit court granted Masters' motion, and Johnson appealed. *Id.*, ¶¶11-12. We certified the appeal to our supreme court; they accepted the case and reversed, concluding that § 893.40 did not bar Johnson from pursuing her action. *Johnson*, 347 Wis. 2d 238, ¶¶1, 12, 26. To conclude otherwise, the court explained, would produce an unreasonable and absurd interpretation of the statute of repose and would make the promises Masters made in the DSA illusory. *Id.*, ¶26.

¶14 *Schwab* also involved a dispute over the proceeds of a pension. *Schwab*, 397 Wis. 2d 820, ¶10. The parties entered into a divorce settlement agreement that required the husband to divide his pension with the wife "when and if" it became available. *Id.* However, the pension only became available 21 years after the divorce judgment was entered, and the ex-husband argued that his ex-wife was barred by the statute of repose from enforcing the pension provision incorporated in their divorce judgment. *Id.*

¶15 Our supreme court held the claim did not begin to run until the pension became available to the ex-husband. *Id.*, ¶1. According to the court, the

"when and if" condition made it impossible for his ex-wife to judicially enforce the judgment during the first 21 years because the claim was not ripe until the pension became available. *Id.* To apply the statute of repose would deny the ex-wife the benefit of the bargains she made when the parties entered into the settlement agreement and would render the promises made in connection with the divorce illusory, producing an "unreasonable result." *Id.*, ¶¶11-12.

¶16 In this case, as in *Johnson* and *Schwab*, interpreting WIS. STAT. § 893.40 to begin running on the date of the divorce judgment in 1973 would produce absurd and unreasonable results by barring Helen's ability, were she still alive, or that of the children, to enforce the judgment upon John's death. The language of the divorce judgment makes clear that, at the time it was entered, the parties contemplated that John would keep the life insurance policies current throughout his life. The parties likely also contemplated that John—a then-healthy, 39-year-old male—probably would not die anytime soon after the entry of the divorce judgment, but at some undetermined date well into the future, as evidenced by the terms of the agreement requiring John to maintain the life insurance policies for the children's later benefit. In fact, John did live to be 89 years old. Under the terms of the judgment, the children did not have a right to receive any of John's life insurance benefits until John died, which was not until 2023.

¶17 Kay argues that *Johnson* and *Schwab* are inapposite because, while John's obligation to maintain life insurance began in 1973 with the entry of the divorce judgment, the obligations of the breaching spouses in *Johnson* and *Schwab* kicked in at some later date after judgment was entered. We are unpersuaded. A case that is distinguishable on its facts may nonetheless be instructive. *See, e.g.*, *Milwaukee Deputy Sheriff's Ass'n v. Clarke*, 2009 WI App

123, ¶21, 320 Wis. 2d 486, 772 N.W.2d 216. The fact that John's obligations under the judgment began immediately does not matter to our analysis. Rather, as the children aptly explain, "[w]hat matters is that the obligation was unquestionably intended to last beyond the 20-year statute of repose, just like in *Johnson* and *Schwab*."

¶18 To explain further, neither Helen nor the children could have filed a motion to enforce the life insurance provision in the judgment of divorce within the 20-year period contemplated by WIS. STAT. § 893.40 because, throughout that time period, John gave no indication that he had violated the terms of the divorce judgment; that fact only came to light after he died and Kay revealed that John no longer had the life insurance policies in place. Before John died, the divorce judgment contemplated that he would maintain the policies for the children's benefit, and neither John nor Kay informed the children anytime prior to John's 2023 death, that he had breached his obligations to his ex-wife and their children.

¶19 In light of all the circumstances, we conclude that applying the 20-year statute of repose beginning at the time the divorce judgment was entered would render the life insurance provision in the judgment meaningless, and would "'def[y] both common sense and the fundamental purpose' of the statute." *Johnson*, 347 Wis. 2d 238, ¶21 (citation omitted; alteration in original). As such, we disagree with the circuit court that the children's action to enforce the divorce

judgment is barred by WIS. STAT. § 893.40.  We therefore reverse the order of the circuit court and remand for further proceedings consistent with this opinion.[3]

By the Court.—Order reversed and cause remanded for further proceedings.

This opinion will not be published.  See WIS. STAT. RULE 809.23(1)(b)5.

---

[3] Because our decision here rests in the equities, as we have explained, as governed by *Johnson* and *Schwab*, and this resolves the issues on appeal, we do not address additional arguments of the parties. *See Barrows v. American Fam. Ins. Co.*, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (observing that "[a]n appellate court need not address every issue raised by the parties when one issue is dispositive").